CARRINGTOK J.
delivered the opinion of the court.
The act of 1779 gives a preference to original settlers, and so did the loyal company. The act grants to such settlers 400 acres including their settlement, and a preemption of 600 acres adjoining, if such lands can be found, to which no other person has-a legal right. The Chancellor is mistaken when fie likens this to the case of Mane and Hamilton.* If the cases were alike, as he-states them to be, this court would have established the present decree without a dissenting voice; and notwithstanding the criticisms *that have been passed upon that decision, this court upon a revision of that case consider it to-have been determined in strict conformity with the law, and agreeably to the principles of equity. But how was the case of Maze and Hamilton? Maze’s settlement was in 1764; Hamilton’s not until 1770. Maze constantly asserted his claim of settlement right. In June 177S, Hamilton surveyed 1100 acres including Maze’s settlement, and pending the dispute got out his patent. The act of 1779 established the right of prior settlers, and give preemption when vacant lands are to be found adjoining. Though in that case the settlement was Maze’s, yet the adjoining lands which would otherwise have been for preemption, were not vacant, having been surveyed by Hamilton under the authority of the Greenbrier company, anterior to the act of 1779. This court therefore considered that Maze had a right to his settlement, & Hamilton, having a right prior to that, under the law of 1779, was entitled to the remainder of his patent, and so determined it, with liberty to Maze to survey his pre-emption wheresoever else he could hnd vacant land, and reversed the decree. What is this case? Culbertson proves his prior settlement incontestably, in which is included Farlow’s survey'. Burnsides, not till 1786, (long after the determination in favor of Reid in the General Court,) made his survey, and fraudulently obtained his patent for the settlement, and for preemption in the vacant lands adjoining. Until then, we hear of no title in the adjoining lands in any body. Therefore his patent was founded upon a rotten foundation, (so far as it included the settlement and pre-emption,) it being upon the judgment of the commissioners,, which was declared void by the General Court. An attention to dates will point out the distinction between the two cases. In the case at bar, the pre-emption of Samuel Culbertson is made to yield to the patent of Burnsides, altho’ the lands adjacent to Culbertson’s prior settlement were vacant at the time of the judgment of the General Court in 1784, establishing Culbertson’s settlement and pre-emption. Burnside’s survey was not made, nor his patent obtained till 1786, and that by fraud, imposing on the agent of the loyal company' the commissioners certificate in 1781, which had been vacated by the General Court.
The decree of the High Court of Chancery is therefore erroneous in this, that *626 after setting aside Burnside’s patent for fraud, so far as it comprehended the lands adjudged by the General Court in 1784 to Samuel Culbertson for his settlement right, it makes the pre-emption claim of the said Culbertson, founded on *the said judgment, yield to the patent of the said Burnsides, which was not obtained until 1786, upon a survey made in that year.
The decree is to be reversed, and it is now decreed that a survey be made of 400 acres for Culbertson’s settlement right, and 600 acres adjoining, which may be laid down as either party may require, to enable the Cpurt of Chancery to determine as to the reasonableness of the location ; that the patent to Burnsides be also surveyed and laid down to shew how much it includes of the 1000 acres. And when this shall be adjusted, the court doth adjudge &c. that Burnsides do convey to the said A. Reid the inheritance of so much of the 1000 acres as shall be found to lie within the bounds of Burnside’s patent, with warranty against himself and all claiming under him, and deliver possession thereof upon his paying to the said Burnsides at the rate of £3 per hundred acres, for the quantity so to be conveyed: That as to those 1000 acres, the bill of Burnsides be dismissed, and as to the residue of the lands contained in the patent, that the bill of Reid be dismissed, and that Burnsides pay costs in each suit in the High Court of Chancery.

See Appendix.